**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LUANNE HESPELER, et al.              :
    Plaintiffs                           :
                                         :
        v.                           :         3:07-cv-801 (CFD)
                                         :
TOWN OF LEDYARD, et al.              :
    Defendants.                          :
                                         :
                                         :
                                         :
                                         :

## RULING ON MOTION FOR SUMMARY JUDGMENT

**I.      Introduction**

      This action was brought by a group of homeowners against the Town of Ledyard (the

"Town") and the Ledyard Sportsmen's Club (the "Club"), alleging that the defendants put them

at risk from stray bullets fired at the Club's rifle range.  The defendant Town has moved for

summary judgment.  Because this Court finds that no genuine issue of material fact exists as to

the claims against the Town, the motion for summary judgment is granted.

**II. Background[1]**

      The plaintiff homeowners live in the "Wolf Ridge Gap" subdivision in Ledyard.  This

development is located one and one-half mile north of the defendant Club, which operates a rifle

range on its property.  In 2006, the plaintiffs complained of stray bullets reaching their

---

[1]Unless otherwise noted, these facts are taken from both parties' memoranda in support of
and in opposition to the motion for summary judgment, as well as the accompanying Local Rule
56 statements, exhibits and affidavits.

neighborhood and striking their homes.  In response, the Club closed voluntarily and performed

safety modifications to its property.  After the plaintiffs' request for a temporary restraining order

was denied and the changes to the firing range were completed, the Club reopened in late 2008.

The plaintiffs make a variety of claims against the Town, all based on the U.S.

Constitution.  As mentioned below, the plaintiffs are now only pursuing the claim that the Town

is liable because it "invited and encouraged" families to live in Wolf Ridge Gap by zoning it for

single-family residential use even though the Club was near the subdivision that would be

developed after the zoning change.  It appears that the plaintiffs are arguing that it is relevant to

this claim that the Town subsidizes the Club by purchasing memberships for its police officers at

the Club and using it as the town police firing range, and thus the Club performs police functions

on behalf of the Town.  Finally, the plaintiffs also allege as part of this claim that the Town

refuses to take action against the Club's activities.

## III. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there

are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of

law.  See Fed. R. Civ. P. 56;  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White

v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202

F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d

1219, 1223 (2d Cir. 1994)).  Once the moving party has met its burden, in order to defeat the

motion the nonmoving party must "set forth specific facts showing that there is a genuine issue

for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in

his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it.  Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV. Discussion

Summary judgment is appropriate in this case if no genuine issue of material fact exists on the question of whether the Town owed a duty to protect the plaintiffs under the due process clauses of the Fourteenth Amendment.  See Fed. R. Civ. P. 56; Anderson, 477 U.S. at 256.  The other constitutional claims against the Town set forth in the complaint are not being pursued by the plaintiffs.  Thus, this decision turns on the question of whether a municipality owes a duty to the homeowners under substantive due process for zoning property for residential use near a firing range.  Because no such duty exists under the circumstances of this case, the Town is

entitled to summary judgment as a matter of law.

Under 42 U.S.C. § 1983, any person who, acting under color of state law, "subjects or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States may be liable to the injured party. 42 U.S.C. § 1983.  The Supreme Court, in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), held that the Due Process Clause of the Fourteenth Amendment does not impose on state or local governments an affirmative obligation to protect their citizens from private harm under most circumstances.  See 489 U.S. 189, 195 (1989).  The Clause was meant to ensure that the government would not be permitted to use its powers of the state in an oppressive or abusive manner.  See id. at 196.  Thus, the Constitution does not expressly guarantee a minimal level of protection from harm, but rather protects citizens by limiting the power of government to act. See id.at 195.  "It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." Id. at 196.  Simply put, in most situations, the failure of a state "to protect an individual against private violence simply does not constitute a violation of due process." Id. at 197.

The Supreme Court applied DeShaney in Castle Rock v. Gonzalez, 545 U.S. 748 (2005), holding that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause."  545 U.S. 748, 768 (2005) (denying a claim under § 1983 where police failed to respond to emergency calls from a woman who had obtained a restraining order under state law that promised protection to her and

her children from the woman's estranged husband).

There are two exceptions to the general rule that the government does not bear a constitutional obligation under the due process clause to protect citizens from private harm.  See generally Clarke v. Sweeney, 312 F. Supp. 2d 277 (D.Conn. 2004).  First, liability may arise where the state itself has created the danger.  See Pena v. DePrisco, 432 F.3d 98, 108 (2d Cir. 2005), citing Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir.1993).  Second, where a "special relationship" exists between the government and the victim, the state may incur an affirmative obligation to protect the victim from private harm.  See Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993).  While "special relationship" liability arises from the relationship between the government and the victim, liability for "state-created danger" is rooted in the interactions between the government and the private wrongdoer.  See Pena, 432 F.3d at 109.  Since the plaintiffs appear to argue that either exception could apply to their claims, the Court will consider both.[2]

**A. "State-Created Danger"**

Where government officials have themselves created a dangerous situation, a party who is injured as a result may bring a claim for deprivation of due process.  In Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993), the Second Circuit applied DeShaney and held that, while a claim "that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause, an allegation that the officers in some way had

---

[2]At oral argument, counsel for the plaintiffs agreed that the only claim pursued against the Town was a DeShaney-type claim concerning the zoning of the Wolf Ridge Gap neighborhood.

assisted in creating or increasing the danger to the victim would indeed implicate those rights."
985 F.2d 94, 99 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant County
Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  In Dwares, the victims
alleged that police had agreed to allow a group of "skinheads" to assault a group of flag burners,
and had promised not to arrest the abusers unless the events "got totally out of control."  Id.  As a
result, the risk of harm to the victims was increased.  "Such a prearranged official sanction of
privately inflicted injury would surely have violated the victim's rights under the Due Process
Clause."  Id.[3]

　　　Where the government's alleged facilitation of harm by private actors is less active or
direct, however, courts have been less willing to apply the state-created danger exception.
Compare Hemphill v. Scott, 141 F.3d 412 (2d Cir.1998) (finding liability where police officers
allowed a store manager to join them in pursuit of a thief and returned a gun to the manager that
was used to shoot the victim), with Pitchell v. Callan, 13 F.3d 545 (2d Cir.1994) (declining to
impose liability on an off-duty police officer for failing to prevent another off-duty officer from
shooting a houseguest).  While some courts have found liability where police have left a person
in a situation where private harm would likely occur, see Wood v. Ostrander, 879 F.2d 583 (9th
Cir. 1989) (sustaining a claim by a female passenger in an impounded vehicle who was left alone
on the side of the road by police, at night in a dangerous area, where she was later sexually
assaulted), others have declined to find that such failures amount to a constitutional deprivation.
See Stevens v. City of Green Bay, 105 F.3d 1169 (7th Cir. 1997) (holding that a police officer

---

　　　[3]Similarly, the Sixth Circuit found that the state had created a danger when it released the
names, addresses, and phone numbers of undercover police officers.  Kallstrom v. City of
Columbus, 136 F.3d 1055 (6th Cir. 1998).

who left an intoxicated man at a roadside pay phone was not liable for his subsequent death).

Decisions of the District Courts in the Second Circuit have typically required "affirmative

government conduct . . . in which the government actor has done something to aid and abet the

private wrongdoer, or to otherwise encourage the wrongdoer to undertake violent or risky

behavior." Kaya v. City of New London, 2008 WL 220745 at *8 (D. Conn. Jan. 25, 2008).

  In this case, the evidence presented by the plaintiffs does not support a finding that the

Town contributed to a danger to the plaintiffs sufficient to invoke liability under substantive due

process. The plaintiffs claim that the Town's decision to zone the land near the Club for

residential, single-family housing created a dangerous condition. However, the argument that

mere zoning by the government can create a dangerous condition is not enough. For example,

most decisions allowing claims under the state-created danger exception deal with actions taken

(or not taken) by police during the execution of their law enforcement duties. See, e.g. Dwares,

985 F.2d at 99; Hemphill, 141 F.3d at 412; Kallstrom, 136 F.3d at 1055; Wood, 879 F.2d at 583.

While it is possible that government involvement in other than law enforcement activities could

create a danger sufficient to invoke due process protection, there is not a close enough connection

between the Town's conduct and the danger created by use of the Club's firing range. Even in

the light most favorable to the plaintiffs, the facts here merely show that the Town made a zoning

decision to allow residential homes to be constructed some distance from the Club. Any injury to

the plaintiffs is the result of intervening conduct by a private actor and not direct activity by the

Town. Without some additional affirmative action by the government in furtherance of a

dangerous condition, this situation falls outside the scope of the state-created danger exception.[4]

The plaintiffs' arguments that the Town and its police force failed to respond properly to their complaints also fail to establish a genuine issue of material fact as to the existence of any state-created danger.  With regard to the police, the plaintiffs allege that the police created a danger by failing to pursue prior complaints of bullet strikes on the homes in Wolf Ridge Gap. See Civil Action No. 3:07-cv-801, Plaintiffs' Brief in Opposition to Summary Judgment, Docket # 74, Attachment 15, pp. 5-6.  The undisputed record shows that the Town police conducted and concluded a full investigation of the bullet strike at the home of a non-party in 2006 and have an open public safety investigation into general firearm incidents reported in Wolf Ridge Gap .  See Civil Action No. 3:07-cv-801, Town of Ledyard's Brief in Support of Motion for Summary Judgment, Docket # 71, Exhibit A, pp. 9-17.  The steps taken in furtherance of these investigations was explored in detail during the hearing on the motion for a temporary restraining order.  See id.  Nothing in that record gives any indication that these inquiries were incomplete, biased, or otherwise improper.[5]  In any event, those allegations – even if true – are not enough to impose due process liability under DeShaney and Dwares.  With regard to the more general allegations against the Town, the plaintiffs claim that the Town's mayor "largely ignored" the plaintiffs' requests for a meeting and that the Town did not fulfill their requests for information about the club.  See Civil Action No. 3:07-cv-801, Plaintiffs' Brief in Opposition to Summary

---

[4]Plaintiffs originally advanced a claim for an equal protection violation with regard to the zoning.  That claim has also since been abandoned.

[5]Though the plaintiffs do not appear to bring a claim for failure to prosecute, the decision of the Town police not to prosecute a case is generally subject to the protections of absolute prosecutorial immunity.  See Schloss v. Bouse, 876 F.2d 287, 290 (2d Cir. 1989).

Judgment, Docket # 74, Attachment 15, pp. 7-8.  However, the plaintiffs admit that they met with the mayor on two occasions, which were apparently arranged by the local state representative.  Id. at pp. 8.  Finally, the use of the Club by certain police officers is also not enough to cause application of the Due Process Clause.

### B. "Special Relationship"

The special relationship exception arises when the government has a prior interaction with a victim, the nature of which imposes a duty to ensure protection from future harm.  See Erwin Chemerinsky, FEDERAL JURISDICTION, § 8.9 (2007).  Many decisions examining this exception also follow the view that the authority of law enforcement officers to act does not necessarily imply a constitutional duty to act.  See McKee v. City of Rockwall, Texas, 877 F.2d 409, 414 (5th Cir. 1989) (denying a claim for liability where police responded to a domestic disturbance call but did not make an arrest and the perpetrator later attacked the victim).  See also Archie v. City of Racine, 847 F.2d 1211 (7th Cir. 1988) (finding no liability on the part of a dispatcher who failed to send a rescue squad promptly and victim died of breathing difficulties); Doe v. Hillsboro Independent School District, 113 F.3d 1412 (5th Cir. 1997) (en banc) (holding that a school district did not owe a duty to a thirteen-year-old student who was sexually assaulted by a custodian on school grounds after school hours); Pinder v. Johnson, 54 F.3d 1169 (4th Cir. 1995) (en banc) (dismissing claim against police officers who promised to arrest, but instead released, the perpetrator in a domestic violence dispute who then burned down the victim's home and killed three children); Tucker v. Callahan, 867 F.2d 909 (6th Cir. 1989) (denying a claim for liability against a police officer who watched the beating of a man but failed to intervene or

render medical assistance).

Additionally, special relationship cases typically involve individuals who were in government custody at the time of the harm by private actors. Custody is often the "linchpin" of any special relationship. Matican v. City of New York, 524 F.3d 151, 157 (2d Cir. 2008). Duties arising out of special relationships "are usually confined to situations in which the state has taken an individual into custody, or has assumed some form of custodial relationship, as in the cases of incarceration, involuntary commitment, or forced placement in foster care." Kaya, 2008 WL 220745 at *8. For example, the Second Circuit did not recognize a duty on the government to protect a cooperating witness who declined an offer of additional protection. Ying Jing Gan, 996 F.2d at 535. The U.S. Supreme Court has imposed a duty on the state to protect inmates when prison conditions increase the danger of violence. See Hutto v. Finney, 437 U.S. 678, 684 (1978). Similarly, the Court has held that mental health institutions are in a special relationship with involuntarily committed patients. See Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982).

Here, the Town lacks custody or an analogous level of control over the plaintiffs that would justify finding a special relationship subject to due process protection. The plaintiffs argue that when the Town zoned the neighborhood, they were inducing persons to buy homes there. However, the Town did not have any knowledge at the time of the zoning of who would purchase property in the area or when such purchases would occur. As such, at the time the zoning decision was made, the possible group of future home buyers was unknown and any harm such persons might encounter was too remote. Furthermore, there is no evidence that this hypothetical future group of homeowners had a custodial relationship with the Town or a level of "special relationship" invoking due process protection. Finally, it appears that the Supreme

Court would not permit a due process claim to proceed when all that is challenged is a prior zoning decision of a town which might permit exposure to some future residents in some possible circumstances.  The Due Process Clause requires a closer connection before such a constitutional claim is viable.  Without any evidence to support a qualifying "special relationship" between the plaintiffs and the Town, the plaintiffs can not sustain their claim for a constitutional violation against the Town.  Therefore, the Town is entitled to summary judgment.[6]

Since the plaintiffs' remaining claim against the Club is on a state law basis, this case is remanded to state court.  See Pierpoint v. Barnes, 94 F.3d 813, 818 (2d Cir. 1996).  See also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 351-52 (1988) (holding that where federal question jurisdiction no longer exists, remand is the proper remedy to ensure that the statute of limitations will not foreclose the surviving claims).  The complaint refers to a nuisance claim against the Club, which is a state law cause of action.

---

[6]Because the plaintiffs are unable to sustain a constitutional claim against the Town, the state action question concerning the Club does not affect the outcome in this case.  Accordingly, this Court declines to reach that issue.  See Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Department of Parks & Recreation, 311 F.3d 534, 544 (2d Cir. 2002) (affirming district court's decision not to reach the state action question when no constitutional violation had occurred).

**V.      Conclusion**

For the reasons set forth above, the defendant's motion for summary judgment [Dkt. #71]

is GRANTED.

SO ORDERED this   28th   day of September 2009, at Hartford, Connecticut.


 /s/ Christopher F. Droney

**CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**